## LEHIGH VALLEY R. CO. v. SKOCZYLA.*

(Circuit Court of Appeals, Third Circuit. February 2, 1922.)

No. 2781.

Master and servant ⬤=288(15)—Assumption of risk by workman using defective wrench held for jury.

A workman tightening nuts on a railroad bridge was given a wrench, which, as he knew, was worn and defective. He took it to his foreman, showed the defects, and told him it was "no good"; but the foreman without promise of repair or substitution, ordered him back to his work. While using the wrench, it slipped, and the workman fell from the bridge and was killed. Held, in an action for his death under Employers' Liability Act, § 1 (Comp. St. § 8657), that whether deceased assumed the risk, or whether he was justified in relying on the judgment of the foreman, was a question for the jury.

In Error to the District Court of the United States for District of New Jersey; John Rellstab, Judge.

Action at law by Frank Skoczyla, administrator of the estate of Paul Kulish, deceased, against the Lehigh Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Collins & Corbin, of Jersey City, N. J., and George S. Hobart, of Newark, N. J. (Edward A. Markley, of Jersey City, N. J., of counsel), for plaintiff in error.

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 258 U. S. —, 42 Sup. Ct. 463, 66 L. Ed. —.

Frank Hardenbrook and Charles M. Egan, both of Jersey City, N. J., for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and ORR, District Judge.

WOOLLEY, Circuit Judge. On a bridge devoted to both interstate and intrastate commerce, Kulish was tightening nuts with a wrench which he knew was old and worn, and therefore defective. The wrench slipped and he fell from the bridge and was killed.

At the trial of this action, brought by the administrator of Kulish to recover damages for his death, the court submitted the question of assumption of risk and the jury returned a verdict for the plaintiff. By this writ of error the defendant brings here for review the action of the court in refusing to hold, as matter of law, that the decedent had assumed the risk which resulted in his death. Specifying error in this regard, the defendant relies on Pryor v. Williams, 254 U. S. 43, 41 Sup. Ct. 36, 65 L. Ed. 120. In that case an employé of the defendant was directed by his boss to use a claw bar with a defective claw. Injury followed. The employé did not know of the defect, nor does it appear that his boss knew of it. The Supreme Court of the United States reversed the Supreme Court of Missouri in its holding that, as the risk was attributable to the master's negligence, the employé had not assumed it, but was guilty of contributory negligence, which, under the Federal Employers' Liability Act (Comp. St. §§ 8657–8665), goes only to damages. By this decision the Supreme Court of the United States sustained, inferentially at least, an intermediate appellate court which had held that as the defect was quite obvious, and as it was equally obvious to the employé and employer, the employé in using the claw bar must be held to have appreciated the danger and have assumed the risks thereof. While there is a similarity between a defective claw bar and a defective wrench, that is the only point of resemblance between the Williams Case and the case under review. Here the wrench was defective. In fact, the defect was so obvious that the employé saw it and knew it. The risk of using the wrench was, therefore, equally obvious. If in these circumstances alone Kulish had continued to work with the defective wrench he would, under Pryor v. Williams and many other cases, be held, as matter of law, to have assumed the risk and would have been without right to recover for resulting injuries. But he did more. He took the wrench to his foreman, showed him its defects, and told him it was "no good." This clearly was an objection to its further use. The foreman looked at it, and, making no promise of reparation or substitution, ordered him back to his work. Kulish's act of returning to his work under the command of the foreman was, in the mind of the learned trial judge, a circumstance which removed the case from Pryor v. Williams and brought it within N. Y., N. H. & H. R. Co. v. Vizvari, 210 Fed. 118, 126 C. C. A. 632, L. R. A. 1915C, 9.

In the Vizvari Case—also under the Federal Employers' Liability Act—the Circuit Court of Appeals for the Second Circuit sustained the submission to the jury of the question of assumption of risk upon facts

which disclosed that the employé, if he did not fully appreciate the defect of the tool with which he was working when injured, at least doubted its quality and called it to the attention of his foreman. As in this case, the foreman, without promising to repair it, abruptly ordered the employé back to his work, where later he was injured. The court held —though the employé had knowledge of the defect—his election to use the defective tool after making objection to his foreman did not, as matter of law, charge him with assumption of the risk of the defect, and that it was for the jury to say whether, on the foreman's order, the employé voluntarily assumed the risks incident to the continued use of the defective tool, and whether these risks were imminent and such as no man of ordinary prudence would encounter. The facts of the two cases being quite similar, the learned trial judge, in the case at bar, adopting the law of the Vizvari Case, submitted to the jury the question of assumption of risk. In this he is charged with error.

The Vizvari Case was decided in 1913. It was followed by two decisions of the Supreme Court of the United States in Seaboard Air Line Railway Co. v. Horton; the first on a writ of error in 1914 (233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475), and the second on a writ of error in 1916 (239 U. S. 595, 36 Sup. Ct. 180, 60 L. Ed. 458). In the opinions on these writs the Supreme Court addressed its attention to the subjects of contributory negligence and assumption of risk under the Federal Employers' Liability Act. We cite the case not because of similarity in the facts but for the broad principles of law there announced. The law of the Horton Case was made on a state of facts differing in one particular from those of the instant case. In the Horton Case the injured employé knew the defect in an apparatus, made objection to his foreman and returned to work under his foreman's promise of reparation; while in the instant case, with like knowledge and after like objection, the employé returned to work on the foreman's order without a promise to repair it. Yet in their bearing on this case, the opinions in the Horton Case are instructive in that the court distinguished the risk of known defects assumed by an employé, having made objection or having obtained a promise of reparation, from the risk assumed by an employé working with knowledge of defects without objecting or without obtaining such a promise. Quoting from the opinion rendered on the second writ of error (239 U. S. 595, 597–599, 36 Sup. Ct. 180, 181 [60 L. Ed. 458]), the court said:

"When the employé does know of the defect (arising from the employer's negligence), and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employé assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance or until the particular time specified for its performance, the employé relying upon the promise does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise."

Thus it appears from this language of the Supreme Court that an employé may, in varying circumstances, be relieved from the assump-

tion of risk of known defects when he calls them to the attention of his employer and objects further to use a tool containing them, or obtains from his employer an assurance of reparation. Admittedly, when such assurance is given, the law of the Horton Case applies without question. But where, as here, objection was made without eliciting a promise of reparation, we are of opinion under the language of the Horton Case as well as on authority of the Vizvari Case, the question whether an employé, on returning to his work, voluntarily assumed the risks incident to the use of the defective tool was for the jury, and that the test is whether the conduct of the foreman was such as to justify the employé in relying on the judgment of the foreman rather than on his own in the continued use of the tool, or, on the other hand, whether the danger from the defect in such continued use was so imminent that no man of ordinary prudence would hazard it.

As the charge of the court embodied this submission, it was free from error.

The judgment below is affirmed.